## HAMMAN v. CENTRAL COAL AND COKE COMPANY, Appellant.

### In Banc, May 8, 1900.

1. **Miners: $10,000 IN CASE OF DEATH: ACT OF 1891.** The act of 1891, which fixes the maximum amount that widows, and other persons entitled to sue for the death of miners, may recover for their death, at $10,000, where the death is due to the failure of the mine owner to provide proper props for the mine's roof, is constitutional. It is not class legislation simply because it fixes the maximum amount for the death of miners at $10,000 while under the general damage act the maximum amount of damages for such negligent acts is $5,000. This law applies to all persons of a certain class.

2. ———: ———: ———: NECESSARY PARTIES. The right of action under said statute is first to the widow of the miner who was killed, and next to his lineal heirs or adopted children. The widow's right of action is in no wise affected by the fact that the deceased miner left children surviving him.

3. **Negligence:** DEMURRER TO EVIDENCE: CONFLICT: NO CONFLICT. Where there is a conflict in the evidence which goes to establish defendant's negligence and plaintiff's contributory negligence, although preponderating in favor of defendant, no demurrer to the evidence should be sustained, but the case should be submitted to the jury. And even when the evidence is all one way, if it is of such a character that reasonable minds might differ with respect to it, the case is still one for the consideration of the jury.

4. ———: ABANDONMENT OF WORK BY SERVANT. An experienced miner who knew the condition of the mine roof, was killed by its falling on him. Held, that it was not his duty to abandon his work, if the company had been requested by him to furnish props for the roof, had promised to do so, and failed, unless the roof was so glaringly defective and unsafe that a man of ordinary prudence and caution would not have worked in the room, or unless it was so dangerous as to threaten immediate danger. And under the circumstances of this case such matters were for the consideration of the jury.

5. ———: TECHNICALITIES IN INSTRUCTIONS. Plaintiff's instruction permitted a recovery "if the danger was not so apparent as to be obvious to a person of ordinary observation," when it should have permitted a recovery "if the danger was not so apparent as to be observed by a person of his experience in the exercise of ordinary observation and prudence." All the persons who testified concerning the conditions when the accident occurred were experienced workmen in the same line of employment. *Held*, therefore, that the criticism, though correct, is entirely too technical to justify a reversal.

6. ———: EARNING CAPACITY OF DECEASED. Not what the one whose death was due to the negligence of a coal company, earned the year before he was killed, but what he was earning at the time of his death, is a proper subject of inquiry.

7. Petition: NO CAUSE OF ACTION: APPELLATE PRACTICE. Unless the record shows that objection to the introduction of evidence under the petition was made at the time, such objection can not be considered in the appellate court.

8. Remarks of Counsel. Improper remarks of counsel must be called to the attention of the trial court in the motion for a new trial, or be ignored on appeal. A statement in the motion that the verdict was the result of partiality and prejudice does not sufficiently call the court's attention to such remarks.

Appeal from Bates Circuit Court.—*Hon. W. W. Woods*, Special Judge.

AFFIRMED.

*Perry & Crain* and *Graves & Clark* for appellant.

(1) This case should have been taken from the jury upon defendant's instruction in the nature of a demurrer to the testimony, interposed at the close of plaintiff's case, and re-interposed at the close of the whole case. The danger was obvious and impending, and was known to defendant for six days prior to the accident. Fugler v. Bothe, 117 Mo. 475; Watson v. Coal Co., 52 Mo. App. 366; Lucey v. Hannibal Oil Co., 129 Mo. 32; Devit v. Railroad, 50 Mo. 302; Steinhauser v. Spraul, 127 Mo. 541; Aldridge v. Furnace Co., 78 Mo. 559; Thomas v. Railroad, 109 Mo. 187; Alcorn v. Rail-

road, 108 Mo. 81; Gleason v. Mfg. Co., 94 Mo. 201; Price v. Railroad, 77 Mo. 508; Smith v. Railroad, 69 Mo. 32.    (a) The deceased had the right to rely upon the promises of the master to remedy the defect by furnishing props, yet, having continued his employment under a known dangerous roof, for an unreasonable time, he will be deemed to have waived his objection, and to have assumed the risk. 2 Bailey's Personal Injuries, sec. 3106; Stephenson v. Duncan, 73 Wis. 404; J. A. & N. Railroad v. Velie, 26 N. E. Rep. 1086; G. C. & S. F. Railroad v. Brentford, 79 Tex. 619; Beach on Contrib. Neg. (2 Ed.), sec. 371; Davis v. Graham, 29 Pac. Rep. 1007; Rush v. Railroad, 12 Pac. Rep. 582.    (b)    All the defendant had to do was to prove knowledge of such facts upon the part of the deceased as would suggest the danger. Hill v. Drug Co., 140 Mo. 440.    (c)    Where the danger is glaring and open, the servant acts at his peril, notwithstanding previous promises upon the part of the master.    2 Bailey's Personal Injuries, sec. 3117; Conroy v. Vulcan Iron Works, 62 Mo. 35; Railroad v. Watson, 114 Ind. 20. (d) Deceased being an old and experienced miner was in law bound to call to his use his experience in determining the danger of his position, and if such experience would bring to him knowledge of the danger he is presumed to have had such knowledge.    Watson v. Coal Co., 52 Mo. App. 366; Quick v. Minn. Iron Co., 47 Wis. 361; Anderson v. Clark, 29 N. E. Rep. 589; 1 Bailey's Personal Injuries, sec. 700; Miss. Riv. Logging Co. v. Schneider, 74 Fed. Rep. 195.    (2) Section 7074, R. S. 1889, amended by laws of 1891, page 182, is a statute *in pari materia*, with sections 4425, 4426 and 4429, being three sections of the general damage act.    Limitations of the action is prescribed in each.    In the former the persons who can sue and recover are classified, and the time fixed within which the action can be brought by each class.    In the latter the same classes of persons are allowed to sue, but they are not classified as to time and otherwise, as in the former.    The statutes are

clearly *in pari materia*, and must be construed together. Sutherland on Stat. Const., sec. 283; Black on Interp. of Laws, pp. 204-211; St. Louis v. Howard, 119 Mo. 41; State ex rel. v. Klein, 116 Mo. 259; Pitt v. Bishop, 53 Mo. App. 600; K. C. Press Brick Co. v. Barker, 50 Mo. App. 60. If such statutes are *in pari materia*, the petition is fatally defective in failing to aver that there are no minor children. The action is filed more than six months after the death of deceased and date of injury. Barker v. Railroad, 91 Mo. 86; McIntosh v. Railroad, 103 Mo. 131. (3) The act of 1891 is unconstitutional, in this that it is a special law permitting the widows of miners to recover to the extent of $10,000, while under the general damage act, prescribing the damages in actions for tort, no other widow can recover more than $5,000. This proposition was not passed upon in DeBoth v. Mining Co., 141 Mo. 497. The law is partial, invidious and unequal, and should not be upheld. Sutherland on Stat. Const., sec. 119.

*Thos. J. Smith, A. W. Thurman* and *W. O. Atkeson* for respondent.

(1) The act of 1891, Laws 1891, p. 182, amendatory of section 7074, R. S. 1889, is in no way in conflict with the provisions of section 53, article IV of the Constitution, as it applies to all of a given class. Luther v. Saylor, 8 Mo. App. 424; Durant v. Coal Co., 97 Mo. 62; Perkins v. Railroad, 103 Mo. 56; Murnane v. St. Louis, 103 Mo. 492; Equitable, etc., Society v. Clements, 140 U. S. 226. (2) Under the provisions of the mining laws of this State the doctrine of contributory negligence can not be invoked, since the statute not only makes it the duty of the owner or operator of a coal mine to furnish props when requested, but also in express terms, provides that he or it shall be liable for all damages that result from such failure. R. S. 1889, sec. 7074; Laws 1881, 165; Laws 1887, 218; Laws 1891, 182; Girard v. Coal Co., 52 Ill.

App. 69; Litchfield Coal Co. v. Taylor, 81 Ill. 590; Quacken-bush v. Railroad, 62 Wis. 411; Burton v. Railroad, 30 Mo. 372; Calvert v. Railroad, 34 Mo. 242; Powell v. Railroad, 35 Mo. 457; Edwards v. Railroad, 66 Mo. 567; Young v. Railroad, 79 Mo. 336; Rhea v. Railroad, 84 Mo. 345.    (3) The highest office any government can perform is to protect and preserve the lives of its citizens.    It is the law of self-preservation, which is said to be the first law of nature.    All laws enacted for such purposes should be liberally construed so as to effectuate this benign purpose.    Fell v. Coal Co., 23 Mo. App. 216; Durant v. Coal Co., 87 Mo. 62.    (4)    But conceding even that the common-law doctrine of contributory negligence could be invoked in this case, still the respondent was entitled to have that question submitted to the jury.    (a) The law will presume unless the contrary is established that deceased was at the time of the accident in the exercise of reasonable care and prudence.    Buesching v. Gaslight Co., 73 Mo. 219; Schlereth v. Railroad, 96 Mo. 509; Soeder v. Railroad, 100 Mo. 673.    (b)    The evidence does not show that the danger under unpropped roof was so threatening and immediate as that a prudent man could not conclude that with care and caution he might safely work under it.    Under these circumstances deceased was not guilty of contributory negligence.    Hamilton v. Coal Co., 108 Mo. 375; Huhn v. Railroad, 92 Mo. 440; O'Melia v. Railroad, 115 Mo. 218; Holloran v. I. & F. Co., 133 Mo. 276; Soeder v. Railroad, 100 Mo. 681; Bradley v. Railroad, 138 Mo. 306; Bullmaster v. St. Joseph, 70 Mo. App. 60; Bender v. Railroad, 137 Mo. 240. (c)    Deceased was not guilty of contributory negligence because he had a right to rely upon the promises of the pit boss to send the props.    Hyatt v. Railroad, 19 Mo. App. 295.

IN DIVISION TWO.

BURGESS, J.—This is an action by plaintiff, who is the widow of Philip Hamman, deceased, against the defendant

company, for $10,000 damages, for the death of her husband, a coal miner, by the alleged carelessness and negligence of the defendant.

The petition was filed on the 4th day of October, 1895, and alleges that plaintiff's husband came to his death in a mine owned and operated by defendant, on the 14th day of February, 1895; that her said husband was working in said mine, and was killed by the falling of a large amount of rock from the roof of the room in which he was working; that the deceased had demanded props, with which to prop the roof of the room in which he was engaged at work, some days prior to February 14, 1895, the day of the accident; that defendant willfully, negligently and carelessly failed to send down into the mine the props so demanded; that said mine was one in which more than ten men or miners were worked; and that by reason of such willful negligence, carelessness and failure of defendant, the said Philip Hamman was killed; to the plaintiffs damage in the sum of ten thousand dollars, for which sum she asks judgment.

While the petition alleges that plaintiff was the widow it contains no allegation with respect to his children.

The answer of defendant was first a general denial of the allegations in the petition. It then alleged affirmatively that Philip Hamman was guilty of negligence which contributed directly to his death, in failing to use for his own protection props and timbers which had been furnished to him by defendant, and which were in the room at the time. That he was a practical miner, and saw and knew the dangerous condition of the roof under which he worked, and with this knowledge voluntarily continued to work thereunder for a long time prior to and up to the accident, and thereby assumed the risks incident to the same. The answer further alleged that the act of the Legislature, entitled, "An act to amend section 7074, chapter 115, article II, of the Revised Statutes, of the State of Missouri, relating to the safety and inspection of mines."

Laws 1891, p. 182, under which this action was brought, is unconstitutional and void, because class legislation, which is inhibited by section 53, article IV of the State Constitution. It was also alleged in the answer that for the same cause of action herein sued upon, the plaintiff therein prior to the June term, 1895, of the Bates Circuit Court, instituted suit against this defendant, and that a trial thereof was had in said circuit court, at the June term thereof, 1895, and a nonsuit taken by plaintiff.

The facts briefly stated are, that plaintiff is the widow of Philip Hamman, deceased, who was at the time of his death, and for a long time prior thereto, by occupation a coal miner, and while at work as such miner in defendant's coal mine, on the 14th day of February, 1895, he was killed by the falling upon him of a 'large piece of slate about twelve feet square from the roof under which he was working at the time.

At the time of his death Philip Hamman left surviving him two children by a former marriage who are not parties to this suit. One of them, David Hamman, testified that he had been mining fourteen years and was eighteen years of age when he begun; and the other Jake Hamman, testified that he was about thirty-one years old.

More than ten men were employed in the mine at the time of the accident.

Plaintiff began suit against defendant on this same cause of action to the June term, 1895, of the Bates Circuit Court, but took a nonsuit at the same term.

At the time of the accident there were no props supporting the roof to the room in which it occurred, back from the face of the coal for a distance of from twenty-two to twenty-five feet, and it was unpropped from sixteen to eighteen feet one week before the accident, while it should have been propped to within eight to twelve feet of the face, though sometimes when the roof appeared good in that room it was not propped nearer than from twenty to twenty-five feet, and in

the adjoining room it was worked for thirty feet in advance of the props.   The roof where the accident happened was examined by one of the miners with his pick, which was the usual and proper way to examine the roof and test its strength, within one hour prior to the accident, and found to be safe to work under.   After this and before the accident no shots were fired in this room, but the shot-firer was in there about nine o'clock the night before Hamman was killed, and testified that while he hardly had time to examine the roof, he looked at it and thought it was all right and it looked like it was safe.

It was shown by the evidence for plaintiff that props for this room were demanded on Friday and Saturday, and again on the following Thursday and Monday, and again on the morning of the day of the accident, which occurred late in the evening.   On the other hand defendant's pit boss testified that the only demand made was on Friday or Saturday before the accident, when deceased called for one car of props, and he sent him two cars of eight props each.

Plaintiff's evidence also tended to show that there were some three and three and one-half foot props in the cross cut between the rooms, about one hundred and fifty feet from the center, that were worked by the deceased and his son, that had been sent there for use by John Jackson, who worked in the room before deceased did, but which were not used because they were too short, and could not be safely used.   The length of props required in this room was from four to four and one-half feet.

While the witnesses as a rule testified that it was unsafe to leave the roof of a mine like the one in which the accident occurred, unpropped from twenty to twenty-five feet, they all agreed that the proper method of examining a roof of a mine in order to tell whether it can be safely worked under, is by sounding it with a miner's pick, and if the result of the con-

tact of the pick with the roof is a solid or dead sound, it is considered safe to work.

The evidence was conflicting as to whether or not there were any unused props in the room of the accident at the time it occurred, as well also as to their length.

The deceased was a prudent miner of several years' experience.

At the close of plaintiff's evidence, and again at the close of all the evidence, defendant asked an instruction in the nature of a demurrer thereto, which was refused, and exceptions duly saved.

The trial resulted in a verdict, and judgment in favor of plaintiff for five hundred dollars, and after unsuccessful motions for a new trial, and in arrest, defendant appeals.

There is no more important question presented on this appeal than that with respect to the constitutionality of the Act of 1891 (p. 182, Laws of 1891), amending section 7074, Revised Statutes 1889, which prescribes the measure of the recovery of damages in cases of this character, which defendant contends is class legislation and in conflict with section 53, article IV, of the Constitution of this State, which provides that "the General Assembly shall not pass any local or special law......granting to any......individual any special or exclusive right, privilege or immunity," and therefore void.

The law of which the act in question is amendatory pertains to all kinds of mines and mining in this State, and regulates them with respect to providing safeguards for the protection of employees while at work in mines, and its constitutionality is not questioned, but the argument is that the amendatory act which entitled the widow and children of any miner killed by the negligence of his employer while engaged at work in a mine, to recover any sum not exceeding ten thousand dollars damages therefor, while under the general damage act they are only entitled to recover an amount not exceed-

ing five thousand dollars in such circumstances, is class legislation, in that it refers to widows who are entitled to recover damages when their husbands are killed by the negligence of their employers, while the right conferred, not the liability imposed, is the test.

"A statute which relates to persons or things, as a class, is a general law, while a statute which relates to particular persons or things of a class, is special." State ex rel. v. Herrmann, 75 Mo. loc. cit. 354; Lynch v. Murphy, 119 Mo. 163.

The act of 1891, in fixing the maximum amount of damages which any and all persons are entitled to recover under its provisions for the death of a miner at ten thousand dollars, merely places a restriction upon the amount of damages that may be recovered upon a right of action created by the original act. It applies alike to all persons of a certain class, that is, the widows and other persons entitled to sue for the deaths of miners which may be occasioned by the negligence of the employer, and does not apply to any particular person. It is therefore a general law, and not obnoxious to the objection urged against it.

It is of common knowledge that no class of laborers are so much exposed to danger as miners, and that none in proportion to the number engaged meet with so many fatal disasters, and the legislature doubtless for that reason, in order to protect human life, and to prevent such occurrences as far as possible, thought that the necessity for increasing the maximum amount of damages over that fixed by law in other cases existed, in order to stimulate operators of such mines to all needful and proper precautions for their protection. Moreover "class legislation is not necessarily obnoxious to the Constitution. It is a settled construction of similar constitutional provisions that a legislative act which applies to and embraces all persons 'who are or who may come into like situations and circumstances,' is not partial." (Humes v. Railroad, 82 Mo. loc. cit 231.) If the position of defendant should obtain then

VOL. 156 mo—16

any and all laws with respect to mechanic's liens, giving liens to contractors, laborers, etc., against railroads, and all laws giving liens in special cases, and, the law allowing the owner double damages for the killing of his stock by a railroad company, all of which have always been held by this court to be constitutional, are unconstitutional and void.

"The courts before pronouncing a statute void, demand to be satisfied beyond a reasonable doubt of its vice, so this court has announced, 'Both upon principle and authority the acts of the Legislature are to be presumed constitutional until the contrary is clearly shown; and it is only when they manifestly infringe on some provision of the Constitution that they can be declared void for that reason. In case of doubt every possible presumption, not directly and clearly inconsistent with the language and subject-matter, is to be made in favor of the constitutionality of the act.' State ex rel. v. Railroad, 48 Mo. 468; The State v. Able, 65 Mo. 357." Humes v. Railroad, 82 Mo. loc. cit. 232.

Our conclusion is that the act is not unconstitutional.

The statute is complete within itself and in no way depends for its enforcement upon any other statute, not a part or amendatory thereof. It gives to the widow a right of action, the only limitation upon which is, that she bring her suit within one year after the death of her husband. It says that in case of the death of the husband, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, etc., which clearly means first to his widow, next to his lineal heirs or adopted children, and not to them jointly. The petition shows that the action was brought within the prescribed time, and no allegations with respect to the children of the deceased were necessary. Her right of action was not affected by the fact that deceased left children surviving him, notwithstanding he did in fact do so.

It is insisted with much earnestness by counsel for defendant, that the case should have been taken from the jury

upon the instruction asked by defendant in the nature of a demurrer to the evidence. In considering this instruction every reasonable intendment in favor of plaintiff to be drawn from the evidence adduced must be indulged, and when this shall have been done, are we at liberty to say that deceased was guilty of negligence contributing to his own injury, or that the danger of the roof falling upon deceased and injuring him was so obvious and continuous, as to preclude a recovery by the plaintiff in this case?

There can be no question that the defendant knew for at least a week, if not longer, before the accident, that it was necessary in order to make the roof of the room in which plaintiff worked and where the accident happened safe, that it should be propped. It is, however, claimed that deceased was furnished with props at his own request with which to prop the roof, several days before the accident occurred, but that he negligently failed to use them, knowing all the time that the roof was dangerous and liable to fall at any time.

But upon these questions the evidence while preponderating in favor of defendant, was not all one way, and was for the determination of the jury.

It is also contended that plaintiff's husband continued in the service of defendant for several days with full knowledge of the dangerous condition of the roof, and thereby assumed the risk of its falling upon and injuring him.

The general rule is that it is the duty of the master to furnish to his servant a reasonably safe place to work, and upon failure to do so he is guilty of negligence. What is a reasonably safe place to work, where the evidence with respect thereto is conflicting, is a question for the jury, but where it is all one way then it becomes a question of law to be determined by the court. And where the evidence in regard to the negligence is conflicting or even if it is all one way, if it is of such a character that reasonable minds might

differ with respect thereto, the case is one for the consideration of the jury. The duty of the master to the servant extends to such unnecessary and unusual risks, which are known to him, as well also to such as he might be reasonably expected to know, or that he might know by proper care and attention. "The servant assumed such risks as are reasonably necessary and incident to his employment, as well also as such extraordinary and unusual risks as he may see fit to knowingly assume." [Doyle v. Trust Co., 140 Mo. 1.]

The evidence was clear that deceased was an experienced miner, and that he knew the condition of the roof, but it does not necessarily follow that it was his duty to abandon his work, if it was true, that defendant had been requested by him to furnish props for the room, had promised to do so, and failed, unless the roof was so glaringly defective and unsafe that a man of ordinary prudence and caution would not have worked in the room, or unless it was so dangerous as to threaten immediate injury. Mere knowledge that the roof was unsafe, "and that risk was to be incurred in working under it" was not, as a matter of law, sufficient to defeat the plaintiff's action, if the danger was not such as to threaten immediate injury, or if it was reasonable to suppose the room "might be safely used by the exercise of care." [Smith v. Little Pittsburg Coal Co., 75 Mo. App. 177; Stoddard v. Railroad, 65 Mo. 514; Devlin v. Railroad, 87 Mo. 545; Huhn v. Railroad, 92 Mo. 440; Hamilton v. Mining Co., 108 Mo. 364; Holloran v. I. & F. Co., 133 Mo. 470.].

While it must have been apparent to any person of the experience of deceased with respect to such matters that the roof would fall at some time, it can not for that reason be said that it was then about to do so.

In Shearman and Redfield on Negligence (5 Ed.), secs. 211 and 212, it is said: "The true rule, as nearly as it can be stated, is that a servant can recover for an injury suffered from defects due to the master's fault, of which he had notice,

if, under all the circumstances, a servant of ordinary prudence, acting with such prudence, would, under such circumstances, have continued the same work under the same risk......The test of prudence in these cases......is that which a prudent servant, of the same class, using such prudence and judgment as such persons usually possess, but no more, might reasonably be expected to apply to the particular case."

It seems to follow from the authorities, and these considerations, that whether or not deceased assumed the risk of the roof falling upon and injuring him, was under the circumstances for the determination of the jury.

The fourth instruction given on the part of plaintiff is criticised upon the ground that it permitted a recovery "if the danger was not so apparent as to be obvious to a person of ordinary observation;" when it should have said, "if the danger was not so apparent as to be observed by a person of his experience, in the exercise of ordinary observation and prudence." But when we take into consideration the fact that all of the witnesses who testified in the case to the condition of the roof which fell and caused the injury, were expert coal miners themselves, the criticism though correct, is entirely too technical to justify a reversal of the judgment upon that ground.

Nor do we think the verdict without substantial evidence to support it. The weight of the evidence was for the consideration of the jury, and the verdict having met the approval of the trial court, this court will not under such circumstances interfere.

There was no error committed in refusing to permit the witness David Hamman to testify as to what the deceased earned the year before he was killed, as what he was earning at the time of his death was the proper inquiry.

In so far as we have been able to discover, no error was committed in refusing or giving instruction. Every feature

of the case was fully covered by the instructions that were given.

Another contention is that the objection by defendant to the introduction of any evidence under the petition should have been sustained, but it does not appear from the record that any such objection was made at the time, and it can not now be made for the first time in this court.

A final contention is that the judgment should be reversed because of improper remarks of one of plaintiff's counsel while addressing the jury, but this matter was not called to the attention of the court in the motion for new trial, hence can not be considered on this appeal. The mere fact that it was stated in the fourth clause of the motion for a new trial, that the verdict was the result of partiality and prejudice, was wholly insufficient for that purpose.

It follows that the judgment should be affirmed. It is so ordered. *Gantt, P. J.,* concurs; *Sherwood, J.,* concurs with the exception of what is said with respect to the assumption of risks by plaintiff's husband, from which he dissents.

### IN COURT IN BANC.

PER CURIAM: The foregoing opinion filed by *Burgess, J.,* in this cause, while it was pending in Division No. 2 of the court, is approved and adopted as the opinion of the Court in Banc, by a majority of our number. *Gantt, C. J., Brace* and *Valliant, JJ.,* concurring in said opinion; *Sherwood* and *Marshall, JJ.,* dissenting; *Robinson, J.,* absent.