GEORGE M. CALHOON, Respondent, v. D. C. & E. MINING COMPANY, and ANDY NOLAN, Appellants.

Springfield Court of Appeals, January 18, 1919.

1. **HIGHWAYS: Questions: Contributory Negligence.** In action for damages to automobile which collided with defendant's automobile at intersection of two highways, whether plaintiff was guilty of contributory negligence *held* for jury.

2. **NEGLIGENCE: Contributory Negligence: Question for Jury.** Where evidence of contributory negligence is such that reasonable minds might reach different conclusions, question becomes one of fact for jury.

3. **MASTER AND SERVANT: Injuries to Third Persons: Liability of Master.** To render master liable for injuries to third person occasioned by negligence of servant, negligent act must have been within scope of servant's employment.

4. ———: ———: ———. Where contract of employment of foreman did not require master to furnish him transportation to and from his meals, and it was mere accomodation to lend him automobile to go to and from his meals while his own car was out of order, master was not liable for his negligence in use of automobile on highway while going for a meal.

Appeal from Jasper County Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*W. R. Shuck* and *Frank L. Farlow* for appellants.

*McReynolds & McReynolds* and *John H. Flannigan* for respondent.

BRADLEY, J.—Plaintiff sued the D. C. & E. Mining Company, a corporation, and its foreman Nolan to recover damages resulting to his automobile from a collision with a car owned by the defendant corporation, and driven at the time by Nolan. Below, before the court without the intervention of a jury, plaintiff recovered against both defendants and they appealed.

Two propositions as we view the record are presented here. (1) Was plaintiff guilty of contributory negligence as a matter of law? (2) Was Nolan at the time of the injury acting within the scope of his employment?

(1) The collision between plaintiff's car and the car driven by defendant Nolan was at the intersection of two public highways in Jasper county on September 15, 1917, about 6:20 p. m. At the time thereof plaintiff was traveling east and the defendant Nolan north. There was a corn field on the south side of the east and west road, and on the west side of the north and south road; also along the fence on the west side of the north and south road were some walnut trees and undergrowth. The corn, trees and undergrowth prevented one approaching this intersection from the west from seeing south along the north and south road any ap-

preciable distance until within close proximity to the crossing. Likewise the same obstructions prevented one approaching from the south from seeing down the west highway. Plaintiff's version is substantially as follows: That both roads at and near the intersection are graveled. That he approached the crossing at twelve or fourteen miles per hour, and that some seventy-five or eighty feet west of the crossing he sounded his horn; that he could not see south on the north and south road until he was within about fifty feet of the crossing; and that then he could see south about one hundred feet, and that he looked and saw no car approaching. That there was a sign board some four and a half feet wide, length not given, sitting east and west near the southwest corner of the intersection. That when he was about eighteen feet from the center of the intersection, measuring from the seat of his car, he first saw the approaching car from the south, which at that time he places forty feet away, and running thirty-five miles per hour. That he made no attempt to stop his own car or change its course, because the impact came so soon after he first saw the approaching car that he had no time to stop or change his course. That they came together about the center of the crossing; that he heard no horn sounded by the defendant Nolan and that Nolan made no effort to stop his car. Plaintiff is corroborated in his version of the affair by a witness who was accompanying plaintiff at the time. Defendant Nolan's version is about the same as to the obstructions as plaintiff gives. He says that he approached the crossing at fifteen or twenty miles per hour; and that he sounded his horn when pretty near the crossing, and that he heard no horn sounded by plaintiff. That he was within fifteen or twenty feet of plaintiff's car before he saw it; that plaintiff swerved slightly to the north and then back, making a slight curve, and that as plaintiff came back to the tracks of the roadway that they then came together. The car driven by Nolan hit plaintiff's car about opposite the seat, and of the force of the impact defend-

ant Nolan says: "It sprung my Ford so we had to buy the whole thing new."

While it is by no means absolutely certain that plaintiff was wholly free from negligence, yet we are not willing to say as a matter of law that he was guilty of negligence. He says that when within about fifty feet of the crossing he could see south along the north and south road for about one hundred feet, and that he looked and saw no car. He does not say that he looked any more, and evidently he did not, as he did not see the approaching car until it came within the range of his vision. But if he looked as he says he did and saw no car approaching within one hundred feet and was running twelve or fourteen miles per hour then he had a right to assume that no car or other vehicle would approach the crossing at a speed sufficient to arrive there from a point one hundred or more feet south thereof, while plaintiff traveled fifty feet. Plaintiff places his maximum speed at fourteen miles per hour which would be approximately twenty feet per second; and he places Nolan's speed at a maximum of thirty-five miles, which would be approximately fifty feet per second. If it be assumed that Nolan was running thirty-five miles per hour then credence can be given to plaintiff's statement that when he was within about fifty feet of the crossing he looked south for at least one hundred feet and saw no car, provided we also assume that plaintiff was not exceeding fourteen miles an hour. Granting that plaintiff and defendant were running fourteen and thirty-five miles per hour respectively, and continued at this rate to the point of impact, then when plaintiff was fifty feet west of the crossing defendant Nolan was one hundred and twenty-five feet south thereof. We are frank to say that the question of plaintiff's contributory negligence is a close one, yet plaintiff's version is not without the realm if probability. There are, however, many reasons why the conclusion might be reached that plaintiff did not look as he approached this crossing, but the trier of the facts did not reach that conclusion, and

in view of this record we cannot interfere. Where the evidence of plaintiff's contributory negligence is such that reasonable minds might reach different conclusions then it becomes a question of fact. [Meng v. Railroad, 108 Mo App. 1. c. 559, 84 S. W. 213; Barret v. Delano, 187 Mo. App. 501, 174 S. W. 181; Hamman v. Central Coal & Coke Company, 156 Mo. 232, 56 S. W. 1091; Shamp v. Lambert, 142 Mo. App. 567, 121 S. W. 770; Linn v. Massillon Bridge Company, 78 Mo. App. 1. c. 115.] In Meng v. Railroad, supra, 1. c. 559, the court discussing a question of contributory negligence said: "The question conspicuous at the threshold of an examination of the case, and earnestly and diligently discussed by respondent, is the right of plaintiff to have the case submitted to the jury by the denial of the customary imperative instruction tendered at close of plaintiff's testimony. Defendant's contention being that as the colliding car was in plain view and within a short distance, it was manifestly impossible, if in the proper exercise of his senses of sight and hearing, the plaintiff could have escaped warning of its approach and in attempting to pass over the tracks before a rapidly moving car he was convicted of such contributory negligence on his part as to debar his recovery. The question whether the conduct of a plaintiff, under a given state of facts, constituted contributory negligence has been reiterated to be sometimes a question for the court and sometimes a question for the jury. Upon the state of facts demonstrated by plaintiff's testimony as surrounding the collision, the conclusion might reasonably be reached that plaintiff was guilty of contributory negligence, particularly in the light of personal details narrated by plaintiff and held up by appellant, as contradictory and inconsistent with conceded facts. But, in considering this question, every reasonable inference and intendment in favor of plaintiff must be deduced from the testimony, and only where the evidence is substantially all one way, and no two opinions can be formed in the minds of fair minded, reasonable men of ordinary intelligence, should

its effect be declared by the court, but where such description of men might well differ as to the conclusion to be drawn from the facts presented by the testimony, and where uncertainty is evidenced as to the existence of negligence or contributory negligence, such question is beyond the province of the court, not one of law, but of fact to be determined by the jury; and the weight to be given plaintiff's individual testimony is also for its consideration.'' The court sitting as a jury found the issue of plaintiff's contributory negligence against defendants, and there being some substantial evidence supporting that finding, we will not disturb it.

(2) Was Nolan at the time of the collision acting within the scope of his employment? Defendant Nolan was foreman for the mining company, and had charge of the day and night shift of men who worked in the mine of defendant mining company. Nolan lived three and one-fourth miles from the mine, and took his meals at home. Usually he used his own car in going to and from his meals, but for about three weeks prior to the accident Nolan had been using the company's car, the superintendent having furnished the car to Nolan for the purpose of going home for his meals. The car was used generally by the company, it furnished all necessaries and equipment for its operation. The day shift went off at four o'clock, and the night shift went on at seven. At the time of the collision, about 6:20 p. m., Nolan was on his way home for supper with the intention of returning to the mine about seven o'clock. The fact that Nolan was an employee of the mining company and that it owned the car is not sufficient to render the mining company liable. Not only must the relation of master and servant exist in order to render the mining company liable, but the negligent act which resulted in plaintiff's injury must have been within the scope of Nolan's employment. [Hays v. Hogan, 273 Mo. 1, 200 S. W. 286; Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854; Daily v. Maxwell, 152 Mo. App. 426, 133 S.

W. 351.; Evans v. Dyke Automobile Company, 121 Mo. App. 266, 101 S. W. 1132.]

In Hays v. Hogan, supra, the court said: "The reports are full of cases holding that where a servant, even with the master's consent, takes the latter's car and while using it for his own purposes, negligently injures a person thereby, the master is not liable. [Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854; Cunningham v. Castle, 111 N. Y. (Sup.) 1057; Howe v. Leighton, 75 Atl. 102; Patterson v. Kates, 152 Fed. 481; Slater v. Thresher Company, 5 L. R. A. (N. S.) (Minn.) 598; Lotz v. Hanlon, 10 L. R. A. (N. S.) (Pa.), 202; Neff v. Brandeis, 39 L. R. A. (N. S.) 933; Danforth v. Fisher, 21 L. R. A. (N. S.) 93; Daily v. Maxwell, 152 Mo. App. l. c. 426, 133 S. W. 351.]" In Daily v. Maxwell, supra, the Kansas City Court of Appeals, speaking through Johnson, J., said: "Where a chauffeur, either with or without his master's consent, uses the machine for his own business or for his own pleasure and negligently inflicts injury on another, the master cannot be held liable, for the reason that the negligent act being entirely outside the scope of the servant's employment, cannot call into action the rule of *respondeat superior*. The fact of consent is material only in the solution of the issue of whether or not the use of the machine was, in fact, on business of the master." In determining whether a given act is within the scope of the employment of a servant it is always necessary to examine the contract creating the relation between the master and servant. On cross examination Nolan testified: "I was ground foreman at the D. C. & E. Mining Company, and had charge of the day and night shifts; superintend the work in the ground. The D. C. & E. Mining Company have this car that they keep at their plant there, and I operate the car continuously for business of the company, and drove it where it was necessary to carry on their work. Generally had a fellow on the job that looked after the repairs in keeping the car up. At the time this accident occurred I had been driving back

and forth for two or three weeks. We had started a night-shift there and I was working day and night, and it was my business to come back after supper; had been driving the car about three weeks, under Mr. English's instructions. He had told me to use it for that purpose. He is superintendent and stockholder there at the D. C. & E. Mining Company. He employed me, and is the man who had charge of the mines and work there. At the time this accident occurred I was keeping the car at my house, and using it so I could get back and forth to the mines so I could attend to my work." The real test is whether the servant at the time of an injury was engaged in the furtherance of the master's business concerning which the servant was employed. When defendant, Nolan was going to his home for his supper he was then on a mission of his own business, a matter that proximately concerned Nolan, only. The contract of employment did not require the mining company to furnish Nolan transportation to and from his meals and it was a mere accommodation to Nolan to loan him the car to go to and from his meals while his own car was out of order. Had Nolan been in his own car at the time of the collision it could hardly be urged that the defendant mining company would be liable, yet there was no different relation created when Nolan's car broke down, and the mining company loaned him its car to use in going to his meals until his own car was repaired. To hold the mining company liable would be to punish for an act of generosity; and would tend to intimidate any employer from accommodating his servant if that accommodation consisted in loaning the servant an automobile. Defendant mining company cites Spelman v. Delano, 177 Mo. App. 28, 163 S. W. 300, as in point in support of its contention that it is not liable. It was there held that no greater relation than that of bailor and bailee existed between the servant and the plaintiff, Spelman; and it is our conclusion that no greater relation existed between Nolan

and the defendant mining company at the time of the collision than that of gratuitous bailor and bailee.

Plaintiff relies upon Riley v. Railroad, 94 Mo. 600, 7 S. W. 407, to support his contention that the mining company is liable. In the Riley case a child was run over and killed by a switch engine which was being used at the time to carry the foreman of the round-house to his supper. A demurrer was interposed. In disposing of the demurrer the court said: "A demurrer to evidence admits the facts which it establishes or tends to establish, as well as all inferences which may be fairly drawn from them; and in view of the fact that the evidence clearly shows that the use to which said engine had been put by the employees of defendant, for from six weeks to three months before the son of plaintiff was killed, was a notorious fact well known to the employees of defendant, including the night and day yardmasters, and in view of the further fact that, while the superintendent of the company testified that the use to which the engine was put was without his authority or knowledge, he, in point of fact was in a position to know all about it, and stated in his evidence that he had frequently seen the employees and others riding on the engine, and that their object was to get to ride as near their homes as possible, the inference can be fairly drawn that such use of the engine was acquiesced in or consented to by the company." The Riley case may be distinguished on the facts from the case at bar. There the servants of the railroad company, the engineer and fireman were in charge of the engine, not the foreman of the roundhouse whom they were taking to supper, and this had been the case for several months, and was known to the yardmaster. Also must be noted that the engine in the Riley case was being operated by the company's servants upon the railroad track of the company. In other words the railroad company furnished the engine, track and servants; but in the case at bar the mining company furnished only the car, and that as a mere accommodation.

It follows from the above and foregoing that the judgment below should be affirmed as to defendant Nolan, and reversed as to defendant mining company. *Sturgis, P. J.,* and *Farrington, J.,* concur.