SCHOENHERR v. HARTFIELD.

(Supreme Court, Appellate Division, Second Department. April 14, 1916.)

1. EVIDENCE ⬅220(2)—ADMISSIONS—ACQUIESCENCE OR SILENCE.

In an action for the death of a person, struck by defendant's automobile while his chauffeur was returning to Manhattan after visiting his wife in Brooklyn, it was plaintiff's contention that the trip was for the incidental purpose of testing the car, which had been under repair. The court excluded testimony of a witness that he repeated to defendant the chauffeur's statement that he had to take the car out to have it tested, and his query as to what difference it made whether he tested the machine in Brooklyn or Manhattan, and that defendant made no reply. *Held*, that this evidence was properly excluded, as defendant's silence was in no sense an admission of any fact pertinent to the issue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 772, 774, 775, 777; Dec. Dig. ⬅220(2).]

2. EVIDENCE ⬅243(2)—ADMISSIONS—DECLARATIONS OF EMPLOYÉS SUBSEQUENT TO ACT.

Where, 17 hours after plaintiff's testator was struck by defendant's automobile, driven by his chauffeur, the chauffeur told a detective sergeant that he had to take the car out to have it tested, and asked what difference it made where he tested it, such statements of the chauffeur were not admissions of a servant, binding upon defendant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 910; Dec. Dig. ⬅243(2).]

3. TRIAL ⬅260(1)—INSTRUCTIONS COVERED BY THOSE GIVEN.

It was not error to refuse a requested instruction, where the court had already charged fully and fairly upon the subject.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. ⬅260(1).]

4. MASTER AND SERVANT ⬅302(6)—INJURIES TO THIRD PERSONS—LIABILITY.

Defendant's chauffeur drove defendant's automobile for the purpose of visiting his wife, and while returning to the garage struck and killed plaintiff's testator. It was plaintiff's contention that the trip was for the incidental purpose of testing the car, which had been under repair. *Held* that, if the chauffeur had generally the right to test the car after repair, the case nevertheless fell within the rule that the mere fact that an injury was caused by the negligence of a servant in the performance of an act, which taken per se was within the scope of his employment, will not impose a liability upon the master, if the act was merely incidental to the servant's attempt to perform an act entirely beyond the scope of his authority; it being immaterial that the accident occurred while the chauffeur was returning to the garage, as the return was as much a part of his errand, so far as the use of the car was concerned, as the going.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1220; Dec. Dig. ⬅302(6).]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MASTER AND SERVANT &wwww330(3)—INJURIES TO THIRD PERSONS—WEIGHT AND
   SUFFICIENCY OF EVIDENCE.
       In an action for the death of a person, struck by defendant's automo-
   bile while his chauffeur was returning from visiting his wife, in which
   plaintiff claimed that the trip was for the incidental purpose of testing
   the car, which had been under repair, evidence as to the necessity of test-
   ing the car *held* to show by the weight thereof that the trip was not with-
   in the implied powers of the chauffeur to test the car.
       [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1272;
   Dec. Dig. &wwww330(3).]

6. MASTER AND SERVANT &wwww330(2)—INJURIES TO THIRD PERSONS—EVIDENCE.
       In an action for the death of a person, struck by defendant's automobile,
   plaintiff contended that defendant's chauffeur was driving the car for
   the incidental purpose of testing it after repairs. The chauffeur testified
   that, prior to the Thursday preceding the Monday of the accident, the
   repairs had been completed; that the car was driven on Thursday; that
   nothing was done on it until Monday, when it was again driven; that on
   that day a stone hit the radiator, putting a little leak in it; that, upon his
   return to the garage, the chauffeur soldered it and put new water in it;
   that this work was done in an hour and a half or two hours; and that,
   when the chauffeur left for the trip during which the accident occurred,
   water had been pumped into the radiator, and there was no leak. *Held*,
   that it was not error to exclude the chauffeur's testimony that he had
   been working all Monday afternoon, as this did not necessarily contradict
   his testimony that the repairs had been finished on Thursday, in view
   of his testimony that he had the car out on Monday afternoon, and had
   spent an hour or an hour and a half in soldering it.
       [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1271;
   Dec. Dig. &wwww330(2).]

7. APPEAL AND ERROR &wwww1026—HARMLESS ERROR.
       A litigant cannot profit by error in rulings, unless it be so substantial
   as to raise a presumption of prejudice.
       [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4029,
   4030; Dec. Dig. &wwww1026.]

Appeal from Trial Term, Kings County.

Action by Henry Schoenherr, as executor of Herman P. Bender,
deceased, against William Hartfield. From a final judgment in favor
of defendant, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and STAPLETON, MILLS, RICH,
and PUTNAM, JJ.

Francis X. Carmody, of New York City, for appellant.
A. S. Gilbert, of New York City, for respondent.

JENKS, P. J. The action is for negligence. The plaintiff's intes-
tate, attempting to cross a city street in the borough of Brooklyn, was
struck and was killed by a motor car driven by Babcock, the alleged
chauffeur of defendant Hartfield, the alleged owner of the car. Hart-
field was in Europe at the time of the casualty, and did not return
therefrom until some weeks thereafter. The litigation, in addition to
the questions of contributory negligence and of negligence, involved
the ownership of the car, the service of Babcock, and the question
whether at the time of the casualty he was about Hartfield's business.
The uncontradicted evidence elicited by the plaintiff is that Babcock
traveled from the garage in the borough of Manhattan, where the car

was kept, to the borough of Brooklyn, to visit his wife at their home, and to give money to her. But it was the contention of the plaintiff that the trip was also for the incidental purpose of testing the car, which had been under repair. The verdict was for the defendant, and the plaintiff appeals.

[1, 2] The plaintiff insists that certain exceptions to several rulings of the court are well taken. The plaintiff called as a witness Patten, a detective sergeant, who had talked with Babcock 17 hours after the casualty, and under repeated objections and exceptions Patten testified to a subsequent conversation between Patten and Hartfield, whereat Patten had repeated to the defendant certain statements which Babcock had made to Patten in the said talk between them. The said con-. versation between Patten and Hartfield was not confined, however, to repetition of the said statements of Babcock, and finally, at the close of Patten's testimony, the court under exception struck out so much of his testimony as related to the alleged statements by Babcock to Patten as to how the accident happened and what Babcock did in the said absence of the defendant. After protest and discussion, wherein the plaintiff's counsel said that he did not know what "goes out," the court stated:

"I said those matters which the witness stated as having been stated to him by Babcock as to what he did in the absence of Mr. Hartfield in Europe, what he said and what he did, about his work and about his services."

The court had not said precisely this, but has ruled out the testimony of Patten of alleged statements by Babcock to Patten "as to how the accident happened and what he did in the absence of Mr. Hartfield." The testimony which could be material and which was ruled out is that Patten *had asked Babcock what he was doing in Brooklyn, "and he said he had to take the car out to have it tested."* *"I had received my wages that day, and I took them over to my wife; and what difference did it make whether I tested the machine in Brooklyn or Manhattan, so long as I was testing it?"* It does not appear that the defendant made any comment to Patten when Patten had repeated these statements of Babcock. So that all that could be argued as making against the defendant is that, without comment, he heard from Patten that Babcock had said to Patten that he (Babcock) went on a trip to Brooklyn to take his wages to his wife, and that, as he had to take the car out to test it, he could test it on such a trip. In the language of Reed v. McCord, 160 N. Y. at page 341, 54 N. E. at page 740, if these statements had remained in the case, "that would have been in no sense an admission of any fact pertinent to the issue, but a mere admission of what he [defendant] had heard without adoption or indorsement. Such evidence is clearly inadmissible. Stephens v. Vroman, 16 N. Y. 381." See, too, People v. Smith, 172 N. Y. 236, 64 N. E. 814. In Stephens v. Vroman, supra, the court say:

"The admission only proves that such out-of-door statements were actually made; but the statements themselves being worthless and incompetent as instruments of evidence, the manner in which they are brought to the notice of the jury is immaterial. The jurors have no right to be informed of them in any manner."

See note to Greenleaf on Evidence, vol. 1, § 202, where it is said that this ruling is in accord with that made in Roe v. Ferrars, 2 B. & P. 548, and for the same reason. The learned counsel for the appellant cites section 1053 of Wigmore on Evidence. In his note to that section, Professor Wigmore cites "in accord" Reed v. McCord, supra, with this comment, "(If not merely in form an admission that he had heard of the fact)." Further, such statements of Babcock cannot be regarded as the admissions of a servant, and therefore as binding upon the defendant. Anderson v. Rome, W. & O. R. R. Co., 54 N. Y. 334; State Bank v. Brocton Fruit Juice Co., 208 N. Y. 495, 102 N. E. 591.

[3] It is insisted that the court erred in refusal to charge this instruction, requested with the comment that counsel thought that the court had "covered it":

"If the servant, in doing his master's business, departs from his course to do something for himself, and after doing his own work is returning to the work of the master and negligently injures one on the way back, the master is liable for the damage inflicted."

The Court: "I think I said it better than that. After returning to and is engaged in the work of his master—I charge that."

The court had already charged fully and fairly upon the subject.

[4] The plaintiff excepted to the following instruction, given after the main charge, upon request of the defendant:

"If the jury find from the evidence in the case that when Babcock left the garage that night, his primary object was to go to his wife's home in Brooklyn and give her some money, then he was not on his employer's business."

The jury could have found—indeed, the proof thereof adduced from the plaintiff's witnesses was undisputed—as the court said in its charge, that Babcock took the car from the garage in New York to his home in Brooklyn to call upon his wife to give her money, and that thereafter he, with his companions, left there, and, after stopping at a place of entertainment, drove the car back to the garage in New York. There is no proof that even suggests that this errand was within the scope of Babcock's authority. The most that can be asserted to fasten liability upon the master is that the chauffeur had the implied authority to test the car, that such a test was required, and that it was within his authority to make such test upon such a journey.

In this case the servant had not gone out solely upon the business of his master, and incident to that business had deviated from his way. The primary purpose of the journey was for the business or pleasure, or both, of the servant, and the use of his master's vehicle was but an incident of the servant's errand. It seems to me that the return was as much a part of the errand, so far as the use of the car was concerned, as the going, for the use of the vehicle for the errand required its return to its place of keep. I do not attach importance to the fact that the casualty occurred after the chauffeur had visited his house and while he was on return to the garage. See Rayner v. Mitchell, L. R. 2 C. P. D. 357, cited in Lord Halsbury's Laws of England, vol. 20, p. 253, especially the comments of Lord Coleridge, C. J., on page 360. In that case the driver, while on his return from his errand, had stopped to bring home certain empty casks for his master.

Even if the servant had generally the right to test the car after repair, I think that the case falls within the principle stated in Shearman and Redfield on Negligence (6th Ed. by Street) vol. 1, § 148:

"The mere fact that the injury complained of was caused by negligence of the servant in the performance of an act which, taken per se, was within the scope of his employment, will not impose a liability upon the master, if the act was merely incidental to the servant's attempt to perform an act entirely beyond the scope of his authority."

The distinguishing feature of the case at bar from those cited by the learned counsel for the appellant is that in the latter cases the servant, while acting in the master's business and within the scope of his employment, deviated from the line of duty to his master. In other words, the cases cited to us might apply if this journey had been taken in the master's business or within the scope of the servant's employment, in order to test the car, and his visit to his home was a deviation from his duty to his master and without the latter's authority.

[5] If I am wrong in my disposition of this exception, the possible criticism upon the instruction is that it necessarily excludes a finding of liability upon the proposition that the servant, within his authority and the scope of his employment, used that journey *incidentally* to test the car and therefore the master might be held. But in any event the proof would not justify a finding of such liability. The chauffeur, called by the plaintiff, testifies that after the defendant had sailed for Europe on July 19, 1911, he worked on the car for 2½ weeks; that on Thursday of the week preceding Monday, August 14th, the car had been run and that there was nothing the matter with it then, and it appears that it had been in use on that day from 2:48 p. m. until 5:22 p. m. The chauffeur testifies that nothing had happened to the car after it had been taken out on that Thursday, that he did nothing on the car on Friday or Saturday, that he took out the car on Monday, the day of the casualty, August 14th (and the records show that the car was out from 4:33 p. m. to 5:22 p. m.), and that there was no defect apparent. He testifies that on this last occasion a child had thrown a stone that hit the radiator and put a "little leak in it"—there was an open seam for half an inch in the honeycomb—and thereupon he filled up the hole temporarily, and when he returned to the garage he soldered it and put new water in it, and that the work was done in an hour and a half or two hours.

The evidence is that, when the chauffeur and his companions left at 6:30 or 7 for this trip to Brooklyn, water had been pumped into the radiator and there was no leak. On cross-examination the chauffeur, called by the plaintiff, testified that all of the repairs had been made prior to the Thursday preceding the Monday of the casualty, and that he had done nothing thereafter save to solder the leak on Monday. In the face of the proof which I have described, and in the absence of any proof even from the expert called by the plaintiff that any test trip like unto that trip taken to Brooklyn was necessary, in view of this leak, I think that a finding that such a trip was within the implied powers of the chauffeur to test the car would have been contrary to the weight of the evidence. I may note that the evidence of the plain-

tiff's sole expert is not only silent on this subject, but indicates that the trips theretofore taken were sufficient to test the car.

[6] The plaintiff insists that the court erred in not permitting interrogation of the chauffeur as to certain matters elicited on his cross-examination, as to his testimony upon such matters given at a previous trial. For the purposes of the record the court permitted the proposed inquiries to be put upon the record without the hearing of the jury. Examination of the questions shows that they could not be material save one:

"Q. Had you been working all day [i. e., on that Monday]? A. I had been working all that afternoon."

This, if heard by the jury, it is asserted, could have been contrasted with his statement that he had finished work on the car on the Thursday before. But it is neither necessarily contradictory nor contrary to his testimony in this case, if we recall that he had had the car out for a "test" on that Monday afternoon, and had spent an hour or an hour and a half on that day in soldering it.

We perceive no errors in the dealing of the court with the deposition of Conchar. It ruled properly upon her answers, in so far as they were irresponsive, hearsay, or involved her inferences or conclusions.

[7] The counsel for the appellant has presented these questions with learning and ability, but it is to be remembered that a litigant cannot profit by error in rulings, unless it be "so substantial as to raise a presumption of prejudice." Post v. Brooklyn Heights R. R. Co., 195 N. Y. 62, 87 N. E. 771.

So far as the facts are concerned, I find no ground that requires disturbance of the verdict. I advise affirmance, with costs.

Final judgment unanimously affirmed, with costs.