259 S.W.2d 399 (1953)
VAN HOOK
v.
STRASSBERGER et al. (two cases).
Nos. 28597, 28598.
St. Louis Court of Appeals. Missouri.
June 16, 1953.
Motion for Rehearing or to Transfer to Denied July 10, 1953.
*400 Moser, Marsalek, Carpenter, Cleary & Carter, Lee M. Carter and Walter K. Streutker, St. Louis, for appellant Summit Fast Freight, Inc.
Keegan & Rickhoff, John R. Rickhoff, St. Louis, for appellant Strassberger.
Stanley M. Rosenblum, St. Louis, Correnti, McKee, Rosenblum, Fitzgibbon & Goldenhersh, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied July 10, 1953.
ANDERSON, Judge.
This is an action by Mildred Van Hook, as plaintiff, against defendants, Charles Strassberger and Summit Fast Freight, Inc., to recover damages for personal injuries alleged to have been sustained on May 10, 1951, as the result of a collision *401 at the intersection of Natural Bridge Road and St. Anne Avenue in St. Louis County between an automobile in which plaintiff was riding as a passenger and a tractor type truck operated by defendant Charles Strassberger, who, it was claimed by plaintiff, was an employee of defendant Summit Fast Freight, Inc., acting within the scope of his employment at the time.
The trial below resulted in a verdict and judgment in favor of defendants. A timely motion for new trial was filed by plaintiff, which motion was sustained by the trial court on the ground that the verdict was against the weight of the evidence. From the order granting plaintiff a new trial, defendants have appealed.
In this court, both defendants urge a reversal of the trial court's order on the ground that their motions for a directed verdict should have been sustained. It is the contention of appellant Summit Fast Freight, Inc., that plaintiff failed to make a case for the jury against it because there was no proof that Charles Strassberger was acting as its agent, servant or employee at the time of the accident. For appellant Strassberger, it is urged that plaintiff failed to make a case for the jury on the issue of negligence.
The accident occurred at about 9:45 a. m. Plaintiff at the time was a passenger in a Chrysler automobile which was being operated by James A. Travis. The Travis car was proceeding westwardly on Natural Bridge Road, and when it reached the intersection of Natural Bridge Road and St. Anne Avenue it was run into from the rear by the tractor driven by defendant Strassberger. Natural Bridge Road at that point has three traffic lanes for westbound traffic. St. Anne Avenue runs north and south. Travis testified that he approached St. Anne Avenue in the center lane at a speed of 25 miles per hour. There was a taxicab on the left of the Travis car which was also proceeding westwardly at about the same rate of speed, that is, 25 miles per hour. The taxicab was two or three car lengths in front of the Travis car. It was raining at the time. Travis further testified:
"There is a stop sign on the northeast corner of St. Anne and Natural Bridge, and this stop was turned almost all the way around. * * * it wasn't facing me, that said `stop'. * * * I imagine that they had turned it around, but they didn't turn it all the way around. * * * It is a movable sign, I think, I am not sure. * * * I saw that sign, and I saw the cab stopped on my left. * * * I put on my brake. * * * Immediately after I stopped and had started to remove my foot from the brake, an impact hit me in the rear. * * * The impact was rather violent. * * * it (Travis' car) was knocked a pretty good piece forward, it was knocked forward enough so we could walk between the car and this truck, four or five feet. * * * I got out and looked at the back. * * * The top of the trunk had been demolished and the left fender was broken and the left tail light was broken, and the part between the trunk and the right fender was broken."
Travis further testified that he stopped at the intersection about two seconds before his car was struck. He stated he did not know how many car lengths he was from the east curb line of St. Anne when he applied his brakes. He testified he gave no signal of his intention to stop "except the brake signal". There were cars parked along the north curb of Natural Bridge Road, east of St. Anne Avenue, the first being about 30 feet from the east curb of St. Anne. The Travis car, according to the testimony of Travis, was struck at a point less than 30 feet east of the east curb line of St. Anne Avenue.
Charles Strassberger testified that as he approached St. Anne Avenue he traveled in the center lane and was going about 25 miles per hour; that he saw a Chrysler automobile about 40 feet in front of him, in the center, also traveling about 25 miles per hour, and saw a taxicab to his left, about even with the Chrysler, traveling at about the same rate of speed; that there were parked cars to his right, beginning about 30 feet east of the east curb of St. Anne; that the Chrysler came to an abrupt stop; that he could not say in how many feet the Chrysler was stopped; that he collided *402 with the Chrysler; that the point of impact was less than 30 feet east of the east curb line of St. Anne; that he put on his brakes and slid into the Chrysler; and that he was about 40 feet behind the Chrysler when he saw it stop. Strassberger also testified as follows:
"Q. Taking into consideration the atmospheric condition, and the condition of the streets, and the fact that your brakes were good, and the fact that you were going twenty-five to thirty miles an hour, within what distance could you bring your 1948 G.M.C. truck you were driving to a complete stop? A. I would say approximately sixty feet."
Charles Strassberger, called to the stand by plaintiff, stated that he was the owner of the vehicle, a 1948 G.M.C. tractor, involved in the collision. He had been using this tractor to haul trailers containing freight for Summit Fast Freight, Inc., since 1944. This was done under a lease agreement. He had no interstate commerce permit of his own to haul freight, but did so under the Certificate of Convenience granted to Summit Fast Freight, Inc.
On the morning of the day of the accident Strassberger completed a trip from Warren, Ohio, to St. Louis. He arrived at the company's dock at 1400 North Broadway about 9:00 a. m. Upon his arrival at the company's dock he unhooked the trailer and deposited in the company's office the waybills for the freight which he had just delivered at the dock. At the time Strassberger turned in these waybills the dispatcher for Summit Fast Freight, Inc., asked him if he wanted to take out another load and, when he answered that he did, the dispatcher handed him the waybills for another load to take out that evening. Strassberger testified that these waybills could have been deposited for him in a box which was maintained for that purpose at the office, and that he would, of course, have taken them from the box before leaving with his load. After completing this business, Strassberger started for his home in the tractor. He wanted to get some sleep before his next trip. It was while on this journey that the collision with the Travis car occurred. Strassberger had with him at the time his trip log, which he had not completed, but was going to complete later. He was required by Summit Fast Freight, Inc., to keep this log and was allowed four hours to complete it. He did not note the accident in the log when he later completed same, stating: "I think it was on my off time." At the time of the accident he was driving his tractor with no load. He reported the accident to the company after he reached home, and during the day he secured the police report on the accident and took it to the company office. Under the terms of his agreement it was his duty to report all accidents to the company.
Strassberger further testified that for the five years prior to the accident it had been his practice, without exception, to drive his tractor home after completing a trip. The company did not pay him for driving home his tractor. He stated that he could have parked the tractor near the company office, but that it would have taken him approximately one-half hour longer to get home if he took a streetcar or bus than to drive his tractor. The tractor was registered in his name. He bought all the gas used in the tractor and paid all expenses for its operation. The only compensation he received from Summit Fast Freight, Inc., was on a mileage basis for his hauls. The company did not pay mileage for the use of the tractor after delivery of merchandise to the company's dock. The payments were based upon the distance between towns, and he was paid nothing for any distance traveled after he delivered the hauled merchandise at the company's dock. After he unhooked his trailer on the occasion in question he was free to go wherever he desired. Summit Fast Freight, Inc., gave him no instructions governing his movements.
Strassberger further testified that after unhooking his trailer that morning and depositing the waybills at the company's office he was free to do whatever he wanted with the tractor; that if he had decided not to go home, but to go elsewhere, he could have done so; that he had no instructions from the company as to what to do with the tractor after leaving the dock that morning; and that there was nothing further for him *403 to do for the company until he came back to the dock that evening to take out another load. Sometime after the collision he purchased gas for the tractor in order to leave St. Louis that evening with a full tank.
On the cab of the tractor the company had caused to be painted in white letters "Summit Fast Freight, Akron, Ohio." There was also painted on said cab the company's Interstate Commerce Commission and State permit numbers.
Plaintiff introduced in evidence the agreement entered into between Summit Fast Freight, Inc., as Party of the First Part, and Charles Strassberger, as Party of the Second Part, with respect to the transportation service to be furnished by Strassberger. In said contract the tractor in question was designated as the property of Strassberger, and it was agreed that:
"(1) Second Party hereby agrees to, and does, furnish to First Party the transportation service herein referred to by means of the equipment set forth and described on the reverse side hereof.
"(2) Second Party agrees with First Party to transport freight from origin points of shipments designated by First Party to destination points given in waybills covering such shipments, unless otherwise instructed in writing on the manifest, a copy of which is to be given the Second Party to cover each and every load or trip, at the rate schedules of First Party on file at its terminals, or as same may be hereafter amended and filed at such terminals.
"(3) The relationship herein created is that of independent contractor and not that of employer and employee. Second Party is a contractor only and is not the employee of the First Party.
"(4) Second Party agrees that the equipment described herein is, and at all times during the continuance of this contract, will be kept in first class repair and condition at his own expense; that he will furnish license plates and all registration certificates required for said equipment by the state of his residence; that said equipment will be operated at his expense, by himself or by competent employees, in a careful manner.
"(5) Second Party agrees to pick up, transport, and deliver punctually all freight received by him while in the motor transportation service of First Party; to secure delivery receipts, properly signed and dated, to cover all freight transported hereunder by the Second Party; and to continually handle such transportation business in such a manner as to promote the good will and good reputation of First Party.
"(6) It is further understood that First Party shall in no wise be obligated to pay any fines or penalties that may be assessed against Second Party, or against his employees by reason of any violation of law by him or them.
"(7) The transportation herewith contracted for shall be moved under the certificates of the First Party and over the routes which First Party is properly certified, authorized and required to travel.
"(8) Second Party agrees that he will not display the certificate numbers or the name of First Party, on such equipment while it is not being used in the transportation service herein contracted for.
"(9) Second Party, in furnishing the transportation service provided for herein, agrees that he will, at all times, comply with all laws, rules and/or regulation of the Interstate Commerce Commission, Bureau of Motor Carrier, or of any public utilities commission or other authority of any state in and through which he may be operating under this contract, which may be binding or obligatory on either party hereto.
"(10) The First Party will provide property damage and public liability insurance to the extent required by law or by lawful regulations with respect to the equipment of Second Party, but only while the equipment is engaged in such transportation service of First Party; and the First Party will provide $50.00 deductible cargo insurance on all commodities transported hereinunder, limited however, to loss by fire, theft, collision or upset.
"In the event of any cargo loss or damage, the Second Party agrees to pay the First Party the full amount of such loss or damage, except when such loss occurs *404 by reason of fire, theft, collision, or upset, but the maximum liability of Second Party shall be $50.00.
"Second Party agrees to report any and all accidents to First Party, or to their insurance carrier, in such manner as First Party shall advise.
"The First Party shall not be liable to the Second Party for any damage sustained by or to the equipment of Second Party while the equipment is engaged in said transportation service, or for loss by confiscation or seizure of the equipment by any public authority.
"In such instances as Second Party may furnish only a tractor to haul a trailer belonging to First Party, Second Party shall be liable to First Party for all losses sustained by First Party resulting from damage to the trailer while being so used, limited, however, to $150.00 in each and every incident or accident.
"(11) Second Party agrees that he will provide, where required, Workmen's Compensation coverage for his employees; and is responsible for the payment of all premiums due under any Workmen's Compensation Law; that he will pay all state and federal taxes for unemployment compensation insurance, old age pensions, and other social security, with respect to all persons engaged by him in the performance of this contract; and further agrees to indemnify, and keep indemnified, the First Party against all liability by reason of his failure so to do.
"(12) Second Party further agrees to receipt for shipments of merchandise transported under this contract, and to collect freight, C.O.D., and other charges on specified shipments when directed in writing so to do.
"(13) Payment of compensation by First Party for such transportation service as herein agreed upon shall be made at such designated periods as First Party may elect; excepting that Second Party shall not be entitled to receive any compensation until he has delivered to First Party, delivery receipts free from loss or damage notations, and trip sheets, logs, or any other records and evidence required by law to be kept by First Party; and until Second Party properly accounts for freight and other charges collected, for loss and damage claims, and for any other claims owing First Party for which Second Party is responsible."
Appellant Summit Fast Freight, Inc., contends that it is entitled to an outright reversal of the judgment as to it for the reason that defendant Strassberger was not at the time of the collision acting for Summit Fast Freight, Inc., in any capacity.
No defense is made that Strassberger was an independent contractor for whose acts Summit Fast Freight, Inc., could not be liable; and no such contention could be sustained if urged. Under the evidence adduced we must hold that, as between the company and the public, Strassberger was the agent of the company and, by reason of such relationship, liability under the doctrine of respondeat superior could be imposed in a proper case. Cotton v. Ship-By-Truck Co., 337 Mo. 270, 85 S.W.2d 80; Virgil v. Riss & Co., Mo.App., 241 S.W.2d 96. To make a case, however, it must be shown that Strassberger, the agent, was acting for his employer at the time he performed the negligent act, and that he was at said time subject to the direction and control of his principal with respect to his physical movements. Douglas v. National Life & Accident Ins. Co. of Nashville, Tenn., 236 Mo.App. 467, 155 S.W.2d 267; Kourik v. English, 340 Mo. 367, 100 S.W. 2d 901.
Respondent concedes that the procedural presumption that Strassberger was acting for the defendant company, which arose upon proof of general employment and evidence that the company's name was painted on the tractor, was dispelled upon the appearance of substantial evidence tending to show that Strassberger was on a mission of his own. However, it is urged that in determining whether plaintiff made a prima facie case we must disregard the evidence of Strassberger which tended to show that he was on a mission of his own, since the jury were at liberty to so disregard it, and determine the issue from a consideration of the underlying facts which gave rise to the presumption, and certain other facts in evidence. When the case is thus considered, *405 respondent insists an inference may be drawn that Strassberger was at the time of the collision performing duties for his employer, and was at said time under the direction and control of Summit Fast Freight, Inc.
The facts and circumstances relied on by respondent as sufficient to invoke the doctrine of respondeat superior are the following: (1) general employment; (2) name of Summit Fast Freight, Inc., painted on the tractor; (3) the fact that Strassberger operated his tractor in interstate commerce under Summit's I.C.C. and State permit numbers, and that these numbers were painted on the tractor at Summit's expense; (4) knowledge and acquiescence on the part of Summit in Strassberger's use of the tractor to convey himself to and from the dock, which knowledge is to be inferred from Strassberger's practice in such use for a period of five years prior to the collision; (5) that the contract between Strassberger and the company provided that the certificate numbers or the name of the company would not be displayed on the tractor when not used in the transportation service of the company; (6) that said contract provided that the company would furnish public liability insurance on Strassberger's equipment while said equipment was engaged in transportation service for the company, and that Strassberger, by said contract, agreed to report all accidents to the company, or to its insurance carrier, in such manner as the company should direct; (7) the fact that Stassberger had with him at the time of the accident the company's waybills for the load he intended to take out later that evening; and (8) the fact that he had with him the log of the trip just concluded, which log he was required by the company to complete within four hours.
The fundamental fallacy in respondent's position is in the assertion that she is not bound by the testimony of Strassberger. It is true that a party is not bound by the testimony of a witness in the sense that he is precluded from proving the contrary by other evidence. But, where a party's only witness, even though he be an adverse party, gives uncontradicted positive testimony as to certain facts, such evidence cannot be disregarded. Nor will a party under such circumstances be entitled to a finding contrary to the positive testimony of his own witness on the basis of inferences from facts and circumstances gleaned from the testimony of said witness. Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W.2d 626.
It appears from the testimony of Strassberger that he arrived in St.Louis about 9:00 a. m. on the morning of the accident, unhooked the trailer from his tractor at the dock of Summit Fast Freight, Inc., and started for his home. His purpose in going home was purely personal, that is, to secure rest before starting another trip that evening. He drove his own tractor. He was not directed by his employer to go home or to use the tractor on the occasion in question. The company did not pay him mileage for the trip home. After leaving the company's dock Strassberger was free to go wherever he desired.
The foregoing facts are not disputed by any witness, nor by the facts heretofore detailed which respondent insists are sufficient to impose liability under the doctrine of respondeat superior. The testimony must therefore be accepted as true. Draper v. Louisville & N. R. Co., supra. Liability, if any, must therefore be found to exist by reason of some service performed for the master by Strassberger while making said journey, or some benefit to Summit Fast Freight, Inc., derived therefrom. The additional evidence, so strongly relied upon by respondent, may be considered in resolving this question. It has no other value. But, before considering this evidence, let us examine the applicable rules of law.
As a general rule, an employer is not liable for the negligence of his agent or servant in driving to and from work. 60 C.J.S., Motor Vehicles, § 437, page 1093; Stone v. Reed, Mo.App., 247 S.W.2d 325; Smith v. Fine, 351 Mo. 1179, 175 S.W.2d 761; Halsey v. Metz, Mo.App., 93 S.W.2d 41; Schmitt v. American Press, Mo.App., 42 S.W.2d 969; Calhoon v. D. C. & E. Mining Co., 202 Mo.App. 564, 209 S.W. 318; Estes v. Owen, 350 Mo. 753, 168 S.W.2d 1052. It is only where the servant or agent at the time is performing some service for *406 the master, or the latter derives some benefit from the trip, that liability can be imposed on the employer. Thus, it has been held that where a master places at the disposal of his servant a motor vehicle to be used by the servant in going to and from his work, the transportation is beneficial to both, and the relation of master and servant continues while the vehicle is used for such purpose. In such cases, the supplying of transportation as one of the inducements to employment indicates that the operation of the vehicle is a part of the master's work. Halsey v. Metz, supra. Again, the master may be held liable in tort where it is a part of the duty of the servant to take the master's car to the employee's home, where it is customarily kept. O'Hare v. Justin T. Flint Laundry & Dry Cleaning Co., Mo.App., 170 S.W.2d 95. It has also been held that the use of the master's vehicle may be regarded as for the master's benefit where it enables the servant to arrive earlier at his work than he would otherwise, or where it shortens the time required for him to secure his meals. Chambers v. Kennedy, Mo.Sup., 274 S.W. 726; Byrnes v. Poplar Bluff Printing Co., Mo. Sup., 74 S.W.2d 20.
It is on the basis of the foregoing cases that respondent contends that liability in the case at bar should be imposed upon Summit Fast Freight, Inc. Respondent insists that the trip home was not solely for the benefit of Strassberger, but for the mutual benefit of Strassberger and Summit Fast Freight, Inc. First, it is urged that the transportation furnished by the tractor enabled Strassberger to go to and from his home more quickly, which was a benefit to the master under the authority of Chambers v. Kennedy, supra, and Byrnes v. Poplar Bluff Printing Co., supra. In both of these cases the motor vehicle was owned by the employer and furnished to the servant for use in transporting himself to and from work. In the case at bar, the tractor was not owned by Summit Fast Freight, Inc., nor was it furnished to the servant pursuant to any contract of employment. Under the facts in the instant case, no benefit to Summit Fast Freight, Inc., could be presumed as a result of shortening the time of Strassberger's journeys to and from work by the use of the tractor.
It is next urged that Strassberger's homeward journey was beneficial to Summit Fast Freight, Inc., for the reason that Strassberger took with him for safe-keeping waybills for freight he expected to haul that evening. There is no evidence in the record that such was his purpose in taking possession of the waybills and keeping them on his person during his trip homeward. He was handed the waybills in question by the company's dispatcher at the time he turned in the waybills for the freight he had delivered and, when asked if he accepted them as a matter of convenience, replied:
"A. They have two boxes there to put the bills in, there's two boxes to put the bills in and I was going out that night and they could have put the bills in the box and I would take them out.
"Q. But they didn't put them in the box, it was a matter of convenience? A. No, sir."
It would appear from this evidence that there was no benefit involved to Summit Fast Freight, Inc., in Strassberger's possession of the waybills. He was not directed to convey them to his home for safe-keeping or for the convenience of the company. His possession of the waybills as agent of the company was unrelated to the movement of the tractor at the time in question. If at said time Strassberger was not performing any duty for Summit Fast Freight, Inc., the possession of the waybills did not make him a servant acting within the scope of his employment. Humphrey v. Hogan, Mo.App., 104 S.W.2d 767; Klotsch v. P. F. Collier & Son Corporation, 349 Mo. 40, 159 S.W.2d 589, 594.
In the above mentioned Klotsch case the plaintiff was injured through the negligence of an agent of the defendant. The accident happened on a Saturday, and the agent had with him records which he intended to use in his company's business on the following Monday morning. It was held that plaintiff failed to make a submissible case, and the court said: "And under the Humphrey case it makes no difference that McAtee had with him the records he would need 36 hours later when he resumed his work."
*407 Finally, it is urged that Strassberger's trip home was beneficial to the company because it was not only made for the purpose of securing rest, but to complete the log of his previous journey, and to "gas" and prepare his tractor for the trip planned that evening.
It is clear from the evidence that the completion of the log and the preparation of the tractor were not the inducing factors in making the trip home, but were casual and incidental, and not sufficient to impose liability. Montana v. Nenert, Mo.App., 226 S.W.2d 394; Sowers v. Howard, 346 Mo. 10, 139 S.W.2d 897; Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525, 530. In the latter case, an employee, after spending an evening at the home of a friend, stopped at a filling station and "gassed up" an automobile furnished by his employer for use in the business. The purpose of "gassing up" the car was to prepare it for use in his employer's business the following day. Thereafter, and while enroute home, he negligently injured plaintiff. We held that no liability could be imposed under the doctrine of respondeat superior. We there said:
"Generally, the owner of a motor vehicle is not legally responsible for the negligent acts of his employee in its operation when at the time of the infliction of injury the employee is using the vehicle solely for an independent purpose of his own. Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S.W.2d 252, 116 A.L.R. 1381; Acker v. Koopman, Mo.Sup., 50 S.W.2d 100; 60 C.J.S., Motor Vehicles, § 437c, p[age] 1098. And this rule applies to the entire trip, going away from and returning to the place where the employer's vehicle is regularly kept, unless the employer's business is also served on such occasion, Kaufman v. Baden Ice Cream Mfrs., Mo.App., 7 S.W.2d 298, but it is not sufficient to impose liability on the master and owner of the vehicle `that the driver as incidental to his main purpose in using the vehicle for his own convenience may have in mind some purpose of the owner.' 60 C.J.S., Motor Vehicles, § 437, p[age] 1101. This is in accord with the rule stated in 2 Mechem, Agency, p. 1471, that `The mere fact that the master's business is to be remotely promoted by the use, is not enough to make the master liable.' Schoenherr v. Hartfield, 172 App.Div. 294, 158 N.Y.S. 388; Temple v. Stafford, 227 N.C. 630, 43 S.E.2d 845.
"In the case at bar the trip was not made in the employer's business. The procuring of the gasoline in order to condition the car for use in the employer's business the next day was not the inducing factor in the making of the trip, but was merely casual and incidental to a purely personal pleasure trip of Renard. It was not the employer's trip. Renard was not `about his master's business at the time of the accident.' Montana v. Nenert, Mo. App., 226 S.W.2d 394, loc. cit. 400; Sowers v. Howard, 346 Mo. 10, 139 S.W.2d 897, and cases cited, loc. cit. 904." Wines v. Goodyear Tire & Rubber Co., 246 S.W.2d 525, loc. cit. 530.
It is our conclusion that the trial court erred in failing to direct a verdict for the defendant Summit Fast Freight, Inc., and in sustaining plaintiff's motion for a new trial as to said defendant.
Appellant Strassberger also assigns as error the action of the trial court in sustaining plaintiff's motion for new trial, contending that there was no substantial evidence to support a verdict for plaintiff.
Since the court sustained the motion for new trial on the ground that the verdict was against the weight of the evidence, the question presented to this court is whether there was substantial evidence to support a verdict for plaintiff. If plaintiff made a case for the jury, the order awarding a new trial must be affirmed. Rosenblum v. St. Louis Public Service Co., Mo. App., 242 S.W.2d 304.
Among the charges of negligence submitted were that defendants (1) operated the tractor at an excessive rate of speed under the circumstances then and there existing; and (2) negligently failed to *408 operate said tractor at a reasonable distance behind the automobile in which plaintiff was a passenger, so that said tractor could be stopped within a reasonable time so as to avoid a collision with said forward vehicle.
The evidence disclosed that Strassberger was driving his tractor about 40 feet behind the automobile in which plaintiff was a passenger. He was traveling about 25 miles per hour. It was raining at the time, and the streets were wet. The automobile in which plaintiff was riding was also traveling 25 miles per hour and, when it reached St. Anne Avenue, was brought to a sudden stop. Strassberger's tractor at the time was still 40 feet to the rear of the automobile. Strassberger testified that, under the conditions then and there existing, it would take 60 feet for him to bring his tractor to a stop.
It is our opinion that plaintiff made a case for the jury on both of the abovementioned charges of negligence. Bear v. Devore, Mo.App., 176 S.W.2d 862; Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243.
The order appealed from is affirmed as to defendant Strassberger, and reversed as to defendant Summit Fast Freight, Inc., and the cause is remanded with directions to the trial court to hold in abeyance the verdict in favor of defendant Summit Fast Freight, Inc., until the issues as to defendant Strassberger are determined on new trial or disposed of otherwise, after which a new judgment shall be entered disposing of the whole case as to all parties.
BENNICK, P. J., and DEW, Special Judge, concur.