Verna **CURTIS** and Ray Curtis (Plaintiffs), Appellants,

v.

Charles H. **JUENGEL**, Jr., Robert J. Juengel, Edwin Juengel, d/b/a Juengel Construction Company, and Gus Roy Fletcher, Defendants,

Charles H. Juengel, Jr., Robert J. Juengel, Edwin Juengel, d/b/a Juengel Construction Company, Respondents.

No. 29579.

St. Louis Court of Appeals.

Missouri.

Jan. 2, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 1, 1957.

Chopin & Boisaubin, Robert D. Corley, St. Louis, for appellants.

G. W. Marsalek, David G. Dempsey, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondents.

ANDERSON, Presiding Judge.

This is an action for damages alleged to have been sustained by plaintiffs as a result of an automobile collision on December 7, 1951, on U. S. Highway 21 in Jefferson County, Missouri. Plaintiffs are Ray Curtis and Verna Curtis, his wife. Defendants are Charles H. Juengel, Jr., Robert J. Juengel and Edwin Juengel, doing business as Juengel Construction Company, and Gus Roy Fletcher. The trial resulted in a verdict and judgment in favor of plaintiffs and against all defendants. Thereafter, defendants Juengel filed their motion for judgment, or, in the alternative, for a new trial.

Subsequently, the court sustained the motion for judgment in accordance with the motion for directed verdict, and overruled the motion for new trial. Judgment was then entered in favor of the Juengels. From this action of the court, plaintiffs have appealed.

The question presented on this appeal is whether sufficient evidence was adduced to warrant a finding that Gus Fletcher, who was driving a truck involved in the accident and who was in the general employ of defendants Juengel, was acting within the scope of his employment at the time in question so as to impose liability on his employers under the doctrine of respondeat superior. No question is raised as to the negligence of defendant Gus Roy Fletcher.

Charles H. Juengel, Jr., was called as a witness for plaintiffs. He testified that he and his brothers were engaged in the building contracting business and that Gus Fletcher was employed by them as a common laborer. The office of the partnership was located at 5501 South Lindbergh Boulevard in St. Louis County, which was at the intersection of U. S. Highway 21 and Lindbergh Boulevard. In the normal operation of the business the company would have about twenty-five employees working at approximately ten jobs in St. Louis, St. Louis County, Jefferson County, and Franklin County.

Fletcher did not have any one place to work but would be assigned to jobs in St. Louis or the three above named counties, wherever the company had a job. It was the practice for an employee when assigned to a job to continue on same until he was assigned to another job. However, at any time he might be instructed to go to another job, and if there was any doubt in his mind as to where he should go, it was the practice for him to call one of the brothers for instructions. The company did not furnish transportation to their workmen. The latter would use their own vehicles in going to and from their work. Gus Fletcher drove

his own truck when going to any of the jobs to which he was assigned.

On December 7, 1951, the company had a construction job going in Ottoville, Missouri, on U. S. Highway 21 in Jefferson County, about twelve miles south of the company's office. Highway 21 is the most direct route from the office to Ottoville. Gus Fletcher worked on this job on December 6th.

Gus Fletcher was also called as a witness for plaintiffs. He testified that he had been employed by the Juengel Construction Company for about seven or eight years, and was in their employ on December 7, 1951. He had no one place to work, but would work wherever his employers told him to go, and if he didn't finish his work on a particular day it was up to him to go back to the same job. If he didn't know where to go he would call one of the Juengels, or one of the latter would call him. He was supposed to start work at 8:00 o'clock. On December 6th, which was the day before the accident, he worked on the Ottoville job putting in drain tile. In going to and from this job he furnished his own transportation. The Juengels knew he was driving his own truck. He had no other business in Ottoville except working for the Juengels on this construction job. At the time of the accident he was on U. S. Highway 21, between the company's office and Ottoville, going to his place of employment. He started from his home at 2211–a Cass Avenue in St. Louis. His brother Jethro was with him at the time. The latter also worked for the construction company at Ottoville. Gus Fletcher was driving his own truck at the time. In going from his home to where the accident happened he passed the intersection where the construction company office was located. On direct examination Fletcher stated that he stopped at the office of the construction company to pick up his paycheck. He did not get out of his truck, but sent his brother into the office to get the check. In a deposition, which was introduced in evidence, Fletcher

stated that he went by the office to see where he was supposed to work and one of the partners told him to go to the same place. Also, that he went by to see where he was to go the next day. After leaving the office he proceeded down Highway 21, and had the accident. He was not paid for working the day of the accident.

Plaintiffs introduced certain interrogatories propounded to defendants. They were as follows:

"No. 17. What were the regular working hours of Gus Roy Fletcher during the month of December, 1951? Eight hours per day, half hour for lunch, five days per week.

"No. 18. Was December 7, 1951, a regular working day? Yes.

"No. 19. What days of the week were his regular working days during the month of December, 1951? Monday, Tuesday, Wednesday, Thursday, and Friday."

Defendants then read the following interrogatory and answer:

"No. 34. Was Gus Roy Fletcher instructed by any of the then partners of the Juengel Construction Company to go to Ottoville on December 7, 1951, for the purpose of doing some work for the Juengel Construction Company? No, it was taken for granted that Fletcher would return to Ottoville to continue certain work which was not completed as of 'quitting time' December 6, 1951."

Appellants assign as error the ruling of the trial court in sustaining the motion for judgment filed by the Juengels. In support of this assignment it is urged that the evidence adduced was such that the jury could have reasonably found that Fletcher was acting within the scope of his employment at the time of the collision. Respondents contend, however, that the evidence does not permit such conclusion, but, on the contrary, shows that Fletcher's employment did

not begin until he reached the job at Otto-ville, hence he was not within the scope of his employment when his automobile collided with plaintiffs' car. In other words, respondents rely upon the "going and coming" rule, which exempts an employer from liability for the torts of his servant while going to or coming from his place of employment, on the theory that the servant under such circumstances is not acting in the course of and in the scope of his employment. Van Hook v. Strassberger, Mo.App., 259 S.W.2d 399; Stone v. Reed, Mo.App., 247 S.W.2d 325; Calhoon v. D. C. & E. Mining Co., 202 Mo.App. 564, 209 S.W. 318; Pesot v. Yanda, 344 Mo. 338, 126 S.W.2d 240; Randall v. Steelman, Mo.App., 294 S.W.2d 588; Miceli v. Williams, Mo.App., 293 S.W.2d 136. But appellants say the rule is not applicable to a case such as the one at bar where the place of employment is subject to frequent and variable changes of substantial distance, especially where the servant has, to his master's knowledge, no other practical means of getting to work except to drive his own vehicle. It is urged that under such circumstances the duty of traveling to the various jobs becomes an implied term of the contract of employment and, while rendering such service, the employee is subject to the master's control as to the mode or method of discharging said duty.

There are, under the decisions, many instances where the "going and coming" rule is held inapplicable, but an examination of the cases so holding reveals facts and circumstances showing some affirmative action of the master in relation to the matter of transportation from which a legitimate inference could be drawn that it was an implied condition of the employment that the servant should be regarded as in the master's service while traveling to his place of employment. Some of the facts considered as warranting such inference are: furnishing the means of transportation or bearing the expense of same; compensating the employee for time spent in traveling; expressly directing the use of the vehicle used; requiring the employee to transport other employees to the job; or carrying tools used in connection with the work.

In the case at bar Fletcher was not paid for the time spent in traveling; he was hired as a building laborer and performed no service for his employer until he reached Ottoville; there was no evidence that the Juengels ever ordered or requested Fletcher to use his truck in connection with their work or directed him with respect to the manner of making the trip; Fletcher was not compensated directly or indirectly for the use of his truck; he did not transport other men at the request of his employers; nor was he entrusted with the duty of keeping and transporting tools or equipment for his employer. The sole purpose of his trip was to transport himself to the job at Ottoville. In transporting himself to his job Fletcher was not conferring any more of a benefit upon his employers than that indirectly enjoyed by employers generally; i. e., an assurance that the employee will report on time in a condition to efficiently perform the duties for which he is paid. This is not a legal benefit which would widen the scope of his employment. Stone v. Reed, Mo.App., 247 S.W.2d 325; Van Hook v. Strassberger, Mo.App., 259 S.W.2d 399.

We do not believe the fact that Fletcher might be shifted from one fixed place of employment to another at frequent intervals would widen the area of his employment so as to render his employers liable for his torts committed while going to and from work. Traveling would be no part of his duties, whether he worked at one place or another, because, in either event, he would not be rendering any beneficial service to his master. In each case the servant would be doing nothing more than getting to his job. Neither does the fact that the Juengels knew that Fletcher used his truck in going to work warrant a finding that they directed its use or reserved the right to control his actions with respect thereto so as to raise an inference that its use was an

implied condition of his employment. Riggs v. Higgins, 341 Mo. 1, 106 S.W.2d 1. Nor can such inference be drawn from the fact that the use of the truck was the most practical means for him to get to work. His employment was voluntary, and the fact that he had and used his own private means to transport himself cannot be deemed to be the equivalent of an order to do so. We conclude that Fletcher, in driving himself to work under the circumstances shown here, was not acting within the scope of his employment. For that reason, the trial court correctly ruled the motion for judgment filed by the Juengels.

The judgment is affirmed.

MATTHES, J., and JAMES D. CLEMENS, Special Judge, concur.