Doris M. PYLES, Plaintiff-Respondent,

v.

BOS LINES, INCORPORATED, Defendant-Appellant,

and

Kenneth E. Malone, Co-Defendant.

No. 32825.

St. Louis Court of Appeals,
Missouri.

April 16, 1968.

---

Armstrong, Teasdale, Kramer & Vaughan, Richard J. Sheehan, John J. Cole, Fred Leicht, Jr., St. Louis, for defendant-appellant.

George G. White, Donald M. Witte, Brentwood, Richard E. Baker, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

Plaintiff Doris M. Pyles recovered a verdict and judgment for $6500 against defendants Bos Lines, Incorporated and Kenneth E. Malone for personal injuries sustained when her husband's car in which she was a passenger was rear-ended by a truck-tractor owned and operated by Malone, who had leased it to Bos Lines. Separate appeals were filed by the defendants but that of Malone was dismissed for failure to perfect and to comply with the rules. Subsequently a suggestion of the death of Malone was filed.

Inasmuch as no point concerning the negligence of Malone or the extent of plaintiff's injuries has been raised by Bos Lines it is sufficient to say that the accident occurred on November 29, 1963, at approximately 3:30 P.M., on Lindbergh Boulevard, a four-lane, nondivided, north-south highway in St. Louis County, at a point just north of the entrance to the old airport building. Mr. Pyles, driving a 1957 Chevrolet sedan, with plaintiff in the right front seat, was proceeding at about 25 m. p. h. in the north-bound lane adjacent to the center line when he observed two cars preceding him in that lane slowing to a stop to await the clearance of opposing traffic before making a left turn. Pyles brought his vehicle to a stop approximately 5 to 10 feet behind the automobile stopped immediately in front of him, and after it had been at rest about one minute it was violently struck in the rear by the tractor driven by Malone.

Bos Lines' initial contention is that there was not sufficient competent evidence to warrant the submission to the jury of the question of whether Malone, at the time of the collision, was operating his tractor within the scope and course of his agency. It also maintains that the trial court erred in permitting the plaintiff, over its objections, to read to the jury Malone's answers to certain interrogatories propounded to him and various excerpts from his deposition. Since in determining whether plaintiff made a submissible case we may consider only that evidence which was properly admitted we must resolve these points in their inverse order.

Despite the fact that Malone was present in the courtroom, and over proper objections made by Bos Lines, the court permitted plaintiff to read various interrogatories which had been propounded to Malone by plaintiff, and his answers thereto, without informing the jury that such evidence was only to be considered as admissions by Malone against his interest. Later in the trial the court also permitted plaintiff, over defendant's objection, to read to the jury excerpts from Malone's deposition without limiting their applicability. It is clear that the court erred in permitting plaintiff to read the interrogatories propounded to Malone and his answers thereto, and to read from his deposition, without informing the jury that they were to be considered only as admissions by Malone against his interest. For the general rule is that a deposition cannot be read in evidence when the deponent is present in court except to impeach his testimony as a witness or as an admission against his interest. Civil Rule 57.29(b), V.A.M.R.; Pettus v. Casey, Mo., 358 S.W. 2d 41; Barber Asphalt Paving Co. v. Ullman, 137 Mo. 543, 38 S.W. 458; Winegar v. Chicago, B. & Q. R. Co., Mo.App., 163 S.W.2d 357. The same rule applies to interrogatories and answers thereto. Civil Rule 56.01, V.A.M.R.; Gibson v. Newhouse, Mo., 402 S.W.2d 324; Smith v. Trans World Airlines, Inc., Mo.App., 358 S.W.2d 91. While Malone's deposition and his answers to the interrogatories were admissible against him as admissions against his interest they were not admissible against or binding on Bos Lines, and the jury should have been so informed. Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S.W.2d 947; State ex rel. Kroger Co. v. Craig, Mo. App., 329 S.W.2d 804. It follows that in determining whether plaintiff made a submissible case against Bos Lines we must exclude such evidence from our consideration.

Mr. Pyles testified that the words and figures, "Bos Lines, Marshalltown, Iowa, truck 101" were on a sign attached to the side of the trailer, that he copied them on a piece of paper at the scene of the accident, introduced as plaintiff's Exhibit H (but not filed here with her other exhibits), and that the license number on the tractor, issued by the state of Iowa, was also written on the paper by him or Malone. Plaintiff also read certain interrogatories propounded to Bos Lines and its answers thereto, the substance of which was that Bos Lines did not know the exact destination of Malone (at the time of the collision) but understood that he was on his way to pick up a new tire for his vehicle; and that it had a written contract with Malone at the time of the occurrence, which had been lost or destroyed and was unavailable, but a specimen copy was supplied. The specimen copy was marked plaintiff's Exhibit I, offered and received in evidence without objection, and the following portions read to the jury:

"1. The Lessor (Malone) shall surrender full control, possession and management of said equipment to the Lessee (Bos Lines) during the term of this lease which shall start at the delivery of equipment at the point of origin as designated above and end with delivery of cargo at destination as designated above, and the (Lessor further agrees to operate said equipment as directed by Lessee) and the Lessor shall furnish the driver, and shall pay the driver for his services, and shall withhold any withholding or social security tax required by the United States Government. Provided, however, that during the time this lease shall be in force as above provided such driver shall be subject to the control and supervision of the Lessee.

\*　　\*　　\*　　\*　　\*　　\*

"3. The Lessor agrees to deliver to the Lessee the above equipment in good running order and condition; maintain the same in good working condition, furnishing all necessary oil, gasoline, tires and repairs for the operation of said equipment and pay all other expenses incident to such operation.

\*　\*　\*　\*　\*　\*

"7. In the event that the equipment referred to herein is not in proper mechanical condition or for any other reason is deemed inadequate to the Lessee, then the Lessee shall have authority to transfer any shipment from this equipment and handle same according to the best judgment of the Lessee.

\*　\*　\*　\*　\*　\*

"10. Lessor shall keep, maintain and equip said vehicles in good condition and in accordance with all local, state and Federal laws and the rules and regulations of the Interstate Commerce Commission and commissions of the states through which said vehicles are to be operated, at lessor's cost and expense."

■ We are of the opinion that the foregoing evidence was sufficient to raise the procedural presumption that Malone was acting within the scope of his agency at the time of the occurrence. Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311; Snead v. Sentlinger, Mo., 327 S.W.2d 202; Sowers v. Howard, 346 Mo. 10, 139 S.W.2d 897. However, such a presumption disappears upon the adduction of substantial controverting evidence on the issue of agency. Terminal Warehouses of St. Joseph, Inc. v. Reiners, supra. We turn, then, to a review of the evidence introduced by Bos Lines to determine whether it was sufficient to destroy the procedural presumption. Logically, Bos' evidence may be divided into two parts. One line of evidence adduced by Bos, which included oral testimony and written records, was that Malone worked for only two hours on November 27, 1963, during which time he drove a load of freight from St. Joseph, Missouri to Kansas City, Kansas; that Malone was then given permission to drive the tractor and empty trailer from Kansas City to St. Louis so that he could be at home on November 28, Thanksgiving Day; and that Malone was scheduled to return to Kansas City on November 30, and to deadhead from there to Marshall to pick up a load for De-

troit. It was also developed that Malone was paid on a mileage basis only for the time that he was on duty, that the check for $125.96 paid him for the trips made by him between November 25 and November 30 did not include any trip to St. Louis, and that Malone was not dispatched on November 29, 1963 on a trip from Chicago to Kansas City.

The other line of evidence followed by Bos Lines was that of reading Malone's answers to certain interrogatories, and various portions of his deposition. In answer to an interrogatory propounded by plaintiff Malone stated that no one else was an occupant in his truck at the time it collided with Pyles' car, but subsequently he answered a similar interrogatory posed by Bos Lines by stating that his son was a passenger at the time of the occurrence. The substance of his deposition, as read by Bos Lines, was that he had purchased and owned the tractor involved in the collision, which was licensed in his name; that he had picked up the trailer in Chicago and left just after midnight on the day in question, and was due to deliver the load in Kansas City early in the morning of the following day, November 30; that it was up to him to choose the route he would take, although Bos Lines paid him on a mileage basis for the shortest route between Chicago and Kansas City, which did not require him to come to St. Louis; that he usually elected to come to St. Louis on his trips from Chicago to Kansas City in order to stop off at his home in St. Louis County; that on the day of the accident he arrived in St. Louis around noon and dropped his trailer off at the Five Star Truck Stop; (it is not clear from the evidence whether the trailer was there serviced, or whether he had the tractor serviced, or both); that he left the trailer at that Stop and went to his home, arriving about 1:00 or 1:30 P.M., ate lunch, and took a nap for approximately an hour and a half; that at the time the accident occurred he was on his way to the General Tire Company, located on Lindbergh somewhat north of the old airport

building, to purchase tires to put on his tractor; that he paid all the maintenance and repair costs for his tractor, and had he bought the tires he would have paid for them; and that it had been his intention, after purchasing the tires, to pick up the trailer when he was notified that it was ready, return to his home for another nap, and leave about midnight for Kansas City.

Other evidence developed during Bos Lines' side of the case was that its primary function was the transportation of freight; that it exercised control and supervision over its drivers, and called them to duty whenever necessary to carry an emergency shipment; and that the central dispatcher of Bos Lines was aware of the fact that Malone, as well as other drivers who lived in St. Louis, usually took the route through St. Louis on a trip from Chicago to Kansas City.

▆▆ Plaintiff is, of course, entitled to the benefit of such of Bos Lines' evidence as is favorable to her and not inconsistent with her evidence and theory. Ward v. Temple Stephens Co., Mo., 418 S.W.2d 935. In contending that she made a submissible case plaintiff points to the evidence which reveals that under the lease Bos Lines had the right to, and did, exercise supervision and control over Malone and his tractor; and that the controlling purpose of his trip was the movement of a cargo of freight from Chicago to Kansas City for Bos, which was Bos' primary function. However, the test to be applied in determining whether an employer can be held liable for an employee's act is, not whether said act was done during the term of employment, but whether it was committed in the prosecution of the employer's business. De Mariano v. St. Louis Public Service Co., Mo., 340 S.W.2d 735; Beckwith v. Standard Oil Co., Mo., 281 S.W.2d 852; Oganaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365. And as this court held in Stone v. Reed, Mo.App., 247 S.W.2d 325, 331: " * * If at said time the employee has departed from his work to accomplish some purpose

of his own, not connected with his employment, the relation of employer and employee is thereby temporarily suspended and the master is not liable for his employee's acts during the period of suspension * *." Malone's testimony was that after dropping his trailer at the service station he went to his home, ate lunch, and took a nap for an hour and a half; and that it was his intention, after obtaining the new tires and picking up the trailer, to return to his home for another nap and to depart for Kansas City about midnight. In the light of such evidence there can be no reasonable doubt that during such period there was a temporary but complete suspension of the employer-employee relationship between Bos Lines and Malone. Van Hook v. Strassberger, Mo.App., 259 S.W.2d 399; Stone v. Reed, supra. Such a suspension, is, of course, to be distinguished from a short, temporary interruption of work, such as one to satisfy a natural need, during which the relationship continues. De Mariano v. St. Louis Public Service Co., supra.

▆▆ Plaintiff also urges that the movement of freight and the maintenance of the vehicle was in pursuance of the business, and in the interest, of Bos Lines, and that in making the trip to purchase and mount the new tires on his tractor Malone was acting within the scope and course of his agency. But Malone was not hauling any freight for Bos Lines when the accident occurred. And as paragraph 3 of the lease agreement introduced by plaintiff provided, it was Malone's duty to " * * * maintain the same (his tractor) in good working condition, furnishing all necessary oil, gasoline, tires and repairs for the operation of said equipment and pay all other expenses incident to such operation." Malone confirmed this, and testified that he would have paid for the tires which he intended to purchase. Indirectly, of course, there may have been some remote benefit to Bos Lines in having Malone's tractor equipped with new rather than (presumably) worn

tires, but in making the trip to purchase and mount them, Malone was fulfilling a contractual obligation of his own, and not engaged in the scope and course of his agency. Randall v. Steelman, Mo.App., 294 S.W.2d 588; Van Hook v. Strassberger, supra; Stone v. Reed, supra.

It follows that the judgment as to Bos Lines, Incorporated must be, and is, reversed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment as to Bos Lines, Inc., is reversed.

ANDERSON, P. J., RUDDY, J., and DOUGLAS W. GREENE, Special Judge, concur.